Anthony WILLIAMS, Petitioner,

v.

Harold WHITE, Respondent.

No. 00–73719.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 30, 2002.

Anthony Williams, State Prison of Southern Michigan, Jackson, MI, pro se.

William C. Campbell, Bethany L. Scheib, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for respondent.

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

HOOD, District Judge.

### I. Introduction

Petitioner Anthony Williams, a state inmate currently incarcerated at the Michi-gan Reformatory in Ionia, Michigan, has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the Court denies the petition.

### II. Facts

Petitioner's conviction arises out of events that occurred on November 26, 1996, outside a shopping mall in Madison Heights, Michigan. On that date, at approximately 1:00 p.m., Irene Gizynski, seventy-nine years old, was getting into her car, when a man came over and grabbed her purse. Prosecution witnesses testified that, during the ensuing struggle, Ms. Gizynski was knocked to the ground, the purse snatcher then jumped into a car and ran over Ms. Gizynski as he sped away. Ms. Gizynski died three weeks later as a result of the injuries she sustained.

The treating emergency room physician testified that Ms. Gizynski told him the perpetrator had backed the car over her right leg and hip and then drove forward over her right leg and hip.

Victoria Kedzierski testified that, at approximately 12:30 p.m. on November 26, 1996, she was walking to her car in a Kmart parking lot in Warren, Michigan, when someone grabbed her purse and tried to run away. Initially, Ms. Kedzierski tried to hold onto her purse. She then let go of the purse, and the man ran into a maroon Buick. She identified Petitioner as the man who grabbed her purse. Ms. Kedzierski was able to report to police the license plate number of the car in which Petitioner fled.

Ferndale Police Officer Kenneth Jaklic testified that, on November 27, 1996, he was going to stop the Buick that Petitioner was driving for speeding. But, when he ran a check of the license plate, he discov-

ered that the car was the object of a police bulletin in connection with the purse snatching the previous day. When Officer Jaklic tried to effectuate a stop, Petitioner sped off at a high rate of speed. Petitioner's car then crashed and Petitioner and Tameka Starks, who had been a passenger in the car, were apprehended.

Tameka Starks testified that she was a passenger in the car when Petitioner stole Ms. Gizynski's purse. She testified that as Petitioner grabbed Ms. Gizynski's purse, she fell to the ground. Petitioner then jumped into the car and sped away. Ms. Starks testified that she asked Petitioner if he had run over the woman, but he denied having done so.

### III. *Procedural History*

Following a jury trial in Oakland County Circuit Court, Petitioner was convicted of first-degree felony murder. On June 13, 1997, Petitioner was sentenced as a habitual offender, second, to life imprisonment without possibility of parole.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I. The trial court should have granted the defense motion for directed verdict because the prosecution failed to prove the malice necessary for felony murder, where the underlying crime, larceny from a person, was not inherently dangerous, and where the circumstances of this particular "purse snatch" did not involve an "almost certain" risk of death or great bodily injury.

II. The trial court abused its discretion in admitting certain hearsay statements made by the decedent, thereby denying Mr. Williams a fair trial and depriving him of his confrontation rights guaranteed by the state and federal constitutions.

A. A detailed statement the complainant made in response to an investigating officer's questioning should not have been admitted as an "excited utterance" under MRE 803(2).

B. That part of the complainant's statement to Dr. Mansour that the car ran her over more than once was not necessary to diagnosis or treatment and therefore should not have been admitted under MRE 803(4).

C. These hearsay statements may well have made the difference between a conviction for murder and one for manslaughter or negligent homicide, and therefore the error in admitting them was not harmless.

III. The trial prosecutor violated the rule of *Doyle v. Ohio* and thus Mr. Williams' right to due process of law by questioning Mr. Williams about his post-*Miranda* silence.

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Williams,* No. 204297 (Mich.Ct.App. Apr. 13, 1999).

Petitioner filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Williams,* No. 114819, 461 Mich. 940, 606 N.W.2d 656 (Mich. Dec.28, 1999).

On August 21, 2000, Petitioner filed the pending petition for a writ of habeas corpus, presenting the following claims:

I. The prosecution failed to prove the malice necessary for felony murder thus the trial court should have

granted the defense motion for directed verdict.

II. Admitting hearsay statements made by the decedent, denied the Defendant a fair trial, and deprived him of his confrontation rights guaranteed by the state and federal constitutions.

III. The trial prosecutor violated the Defendant's right to due process of law, by questioning Mr. Williams about his post-*Miranda* silence.

## IV. *Analysis*

### A. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because petitioner's application was filed after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

■ As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir.1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) [1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir.1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases....

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

---

**1.** 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

*Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1519–20, 146 L.Ed.2d 389 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 1521. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable...

[A]n unreasonable application of federal law is different from an incorrect application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 1521–22.

With this standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

### B. *Sufficiency of the Evidence*

■ Petitioner claims that he is entitled to habeas corpus relief because the trial court erred in denying the motion for directed verdict. Petitioner claims that the trial court erred in denying his motion for a directed verdict because the prosecutor presented insufficient evidence to establish the element of malice.

In *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Su-

preme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West v. Seabold*, 73 F.3d 81, 83 (6th Cir.1996), *cert. denied*, 518 U.S. 1027, 116 S.Ct. 2569, 135 L.Ed.2d 1086 (1996).

The court looks to the last state court opinion addressing the merits of Petitioner's sufficiency of the evidence claim, the Michigan Court of Appeals. In its opinion, the Michigan Court of Appeals did not specifically cite the Supreme Court's decision in *Jackson*, however, based upon the language of the opinion, it is clear that the court applied the *Jackson* standard:

First, defendant argues that the trial court erred in denying his motion for a directed verdict because the prosecutor failed to prove that he acted with wanton and wilful disregard of the likelihood that the natural tendency of his behavior was to cause death or great bodily harm, the third form of malice necessary to sustain a felony-murder conviction. We disagree.

In reviewing a trial court's ruling on a directed verdict, we view the evidence in a light most favorable to the prosecution to determine whether a rational trier of

fact could find that the essential elements of the charged crime were proven beyond a reasonable doubt. *People v. Vincent,* 455 Mich. 110, 121, 565 N.W.2d 629 (1997); *People v. Warren,* 228 Mich. App. 336, 345, 578 N.W.2d 692 (1998). The malice element of felony murder may be established by showing that the defendant intended to kill, intended to do great bodily harm, or acted with a wanton and wilful disregard of the likelihood of the natural tendency of his act to cause death or great bodily harm. . . . Malice may be inferred from the facts and circumstances of the killing, including evidence that the defendant set in motion a force likely to cause death or great bodily harm. . . .

In the present case, the evidence established that while the 79-year old victim was standing on the passenger side of her car, defendant entered his car which was parked next to the victim. He then reached through the window of his still-open car door, grabbed the victim's purse and put the car in reverse. As defendant was backing up, the victim, who was still holding on to the purse, fell to the ground. Defendant continued backing up, eventually wrestled the purse from the victim, and drove away. In the process, defendant drove over the victim crushing her right leg and hip. The victim told the emergency room physician that the perpetrator "backed his car over her right leg and hip and then drove back forward over her right leg and hip." Three weeks after the incident, the victim died after her right leg had been amputated in an attempt to save her life. Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could conclude that defendant acted in wanton and wilful disregard of the likelihood that the natural tendency of his act was likely to cause death or great bodily harm. The

trial court did not err in denying defendant's motion for a directed verdict.

*People v. Williams,* slip op. at 1–2.

Petitioner has failed to establish that the state court's findings of fact were clearly erroneous. Thus, viewing the evidence in a light most favorable to the prosecution, this Court concludes that the Michigan Court of Appeals' decision that sufficient evidence was presented to establish that petitioner acted with malice did not "result[ ] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, petitioner is not entitled to federal habeas corpus relief with respect to this claim.

### C. *Admission of Hearsay Statements*

■ Petitioner claims that he is entitled to habeas corpus relief because the trial court erred in admitting certain statements made by the victim as exceptions to the hearsay rule. First, Petitioner claims that the trial court erred in allowing a police officer to provide hearsay testimony of the victim's description of the incident. Second, Petitioner claims that the trial court erred in allowing the physician's hearsay testimony regarding the victim's account of how her injuries were received. Petitioner also claims that the admission of this hearsay testimony violated his right of confrontation.

The last state court to issue a reasoned opinion regarding Petitioner's claims was the Michigan Court of Appeals. With respect to Petitioner's claim that the police officer's hearsay testimony regarding the victim's account of the incident was improperly admitted, the Michigan Court of Appeals held, in pertinent part:

Next, defendant asserts that the trial court abused its discretion in admitting

a police officer's hearsay testimony regarding the victim's account of the incident. Defendant contends that the statements cannot be deemed excited utterances because they were made in response to direct questioning by the officer and were, therefore, not spontaneous or unreflecting....

MRE 803(2), the excited utterance exception to the hearsay rule, allows admission of statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." MRE 803(2). To be admissible under this exception, two primary requirements must be met: (1) there must be a startling event, and (2) the resulting statement must be made while under the excitement caused by that event....

In the present case, there can be little doubt that being run over by a vehicle is a startling event and that the victim was under the stress of that event when she told the police officer what had occurred. Defendant's contention that the statement was unreliable because it was made in response to police questioning is without merit. We find no abuse of discretion.

*People v. Williams,* slip op. at 2.

Next, with respect to Petitioner's claim that the physician's testimony regarding the victim's statements in the emergency room were improperly admitted, the Michigan Court of Appeals held, in relevant part:

Defendant also contends that the trial court abused its discretion in admitting the statements the victim made to the emergency room physician as statements made for purposes of medical diagnosis or treatment. MRE 803(4) allows the admission of statements made for the purposes of medical treatment or medical diagnosis in connection with treatment. In order to be admitted under this exception the statement (1) must be made for purposes of medical treatment or diagnosis in connection with treatment, and (2) must describe medical history, past or present symptoms, pain or sensations, or the inception or general character of the cause or external source of the injury insofar as reasonably necessary to diagnosis and treatment....

First, defendant contends that the victim's statements, in particular, the statement that the car ran over her more than once, were improperly admitted because they were not necessary for diagnosis or treatment. We disagree.

At trial, the emergency room physician testified that the pre-examination was necessary for diagnosis and treatment in order to ascertain the cause of the injury, the amount of force involved in the accident, and the severity of the injury. He explained that at the onset, he had to determine if the victim's status had declined and to evaluate and prioritize what treatment was needed. Information about the number of times the vehicle ran over the victim's leg was reasonably necessary for diagnosis or treatment as it assisted the physician in determining the severity of the injury and the extent to which the leg was crushed. Moreover, the remaining statements that the victim had been struck with the car door and had fallen before she was run over were also necessary for treatment. The physician testified that the information contained in the challenged statement assisted him in determining the victim's treatment and especially alerted him to assess whether the victim lacked blood supply to the leg.

Second, defendant argues that the victim's statements were unreliable be-

cause: the victim never told bystanders, the police officer, or other medical personnel that she had been run over more than once; the victim "may" have been experiencing the side effects of pain medication before she made the statement; and the victim's statement was the doctor's summary of what the victim said, not the victim's own words.

After a thorough review, we find that defendant has failed to overcome the presumption of truthfulness.... There is no indication that the statements were unreliable, and the effect of possible medications is sheer speculation. It is logical that the victim explained her injury in more detail to her physician than she did to others, and the physician testified that his report reflected what the victim told him.

*Id,* slip op. at 2–3.

Finally, with respect to Petitioner's claim that the admission of the foregoing hearsay testimony deprived him of his right of confrontation, the Michigan Court of Appeals held:

Defendant also contends that the admission of the challenged hearsay statements violated his constitutional right to confrontation. However, the contested statements fell within two firmly rooted exceptions to the hearsay rule. Therefore, defendant's right to confrontation was not violated.

*Id.* at 3.

■ It is well-established that " 'federal habeas corpus review does not lie for errors of state law.' " *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), *quoting Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state

law." *Long v. Smith,* 663 F.2d 18, 23 (6th Cir.1981). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow,* 25 F.3d 363, 370 (6th Cir.1994).

Petitioner has failed to show that the admission of the victim's statements to the police officer and to her doctor in any way denied him his right to a fair trial. Therefore, he is not entitled to habeas corpus relief with respect to this claim.

■ In addition, the United States Supreme Court has held that if a hearsay statement falls within a firmly rooted exception, it does not run afoul of the Confrontation Clause. *Idaho v. Wright,* 497 U.S. 805, 813, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Petitioner has failed to show that the state court's holding that the hearsay statements fell within a firmly rooted exception to the hearsay rule was an unreasonable application of Supreme Court precedent. Thus, Petitioner has failed to show any Confrontation Clause violation.

**D. *Post–Miranda Silence***

Finally, Petitioner contends that he is entitled to habeas corpus relief because he was deprived his right to a fair trial when the prosecutor questioned him about his post-arrest, post-*Miranda* silence.

■ Respondent argues that this claim is barred from review in this Court because it is procedurally defaulted. The doctrine of procedural default provides:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual preju-

dice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.
*Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir.1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady,* 456 U.S. 152, 167–69, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Simpson v. Sparkman,* 94 F.3d 199, 202 (6th Cir.1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust,* 17 F.3d at 162; *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States,* 975 F.2d 1207, 1213–14 (6th Cir.1992), *cert. denied,* 507 U.S. 932, 113 S.Ct. 1314, 122 L.Ed.2d 702 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground only if the state

court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." *Simpson,* 94 F.3d at 202.

If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. *Rust,* 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

This Court begins its analysis of whether Petitioner's claims are procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claims. *See Coleman,* 501 U.S. at 729–30, 111 S.Ct. 2546. The last state court to issue a reasoned judgment denying Petitioner's claim regarding the prosecutor's questions, the Michigan Court of Appeals, held, in pertinent part:

> . . . [D]efendant argues that he was denied his right to a fair trial when the prosecutor questioned him about his post-arrest, post-*Miranda* warnings silence. Defendant failed to object below and this issue is not preserved for review.

*People v. Williams,* slip op. at 3.

Thus, the doctrine of procedural default is invoked and this court may not review this claim unless Petitioner has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that

failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

In the instant case, Petitioner asserts no cause for his procedural default. His claim is therefore barred unless he can establish that a constitutional error resulted in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

 The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup*, 513 U.S. at 321, 115 S.Ct. 851. Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Id.*

Petitioner has not supported his allegations of constitutional error with new reliable evidence that was not presented to the trial court. Accordingly, Petitioner's claim is procedurally barred.

### V. *Outstanding Motions*

Finally, Petitioner has two unresolved motions pending before this Court. Petitioner filed a Motion to Substitute Respondent, requesting that the named Respondent be changed from Harold White to Lee Gilman. Rule 2, Rules Governing Section 2254 Cases, provides that the proper respondent in a habeas corpus proceeding is the state officer having custody of the applicant. In this case, Petitioner has been transferred from the State Prison of Southern Michigan, of which Harold White is the warden, to the Michigan Reformatory, of which Lee Gilman is the warden. Therefore, Lee Gilman is the proper Respondent and the Court grants Petitioner's motion.

Petitioner also filed a Motion to Stay Proceedings in which he asks for additional time to file a Reply to Respondent's Answer to the habeas corpus petition. To date, Petitioner has not filed a reply brief. The Court determines that a reply brief would not assist the Court in a fair disposition of this matter and concludes that Petitioner had ample time to file a reply brief. Accordingly, the Court denies Petitioner's Motion to Stay Proceedings.

### VI. *Conclusion*

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Petitioner's Motion to Substitute Respondent (Docket #26, filed July 5, 2001) is **GRANTED.**

**IT IS FURTHER ORDERED** that Petitioner's Motion to Stay Proceedings (Docket #25, filed July 5, 2001) is **DENIED.**