Carlton Darnell TOWNS, Petitioner,

v.

Andrew JACKSON, Respondent,

No. 01–72295.

United States District Court,
E.D. Michigan,
Southern Division.

April 9, 2003.

Carlton Towns, Ypsilanti, MI, Pro se.

Debra M. Gagliardi, A.A.G., Habeas Corpus Div., Michigan Attorney General's Office, Lansing, MI, for Respondent.

## OPINION AND ORDER CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS

DUGGAN, District Judge.

Carlton Darnell Towns, ("Petitioner"), presently confined at the Huron Valley Men's Facility in Ypsilanti, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, Petitioner challenges the legality of his conviction after a jury trial in the Ottawa County Circuit Court of one count of possession with intent to deliver between fifty (50) and two-hundred and twenty-five (225) grams of cocaine. M.C.L. § 333.7401(2)(a)(iii). Petitioner was sentenced as a second felony offender to twelve to forty years imprisonment for this crime. For the reasons set forth below, the petition is conditionally granted.

### I. Factual Background

Petitioner was convicted of possession with intent to deliver between 50 and 225 grams of cocaine found in the basement of a duplex in or near Holland, Michigan, which was rented by an acquaintance, Mary Dearen. Ms. Dearen knew Petitioner for about a year and a half by the alias of Carlos Washington. The cocaine supporting Petitioner's conviction was found in a bag under the basement stairs of the duplex. The bag contained 123.1 grams of a mixture containing cocaine which was tested and found to be 52% cocaine. Mary Dearen's brother, Kenneth Dearen, was acting as a confidential informant in exchange for dismissal of charges against him of driving with a suspended license and against a passenger in his car of pos-

session of cocaine. Mr. Dearen testified that he made a controlled purchase of about three grams of cocaine from Petitioner in the basement of the duplex the night before Petitioner's arrest. Mr. Dearen paid for the cocaine with marked money which was found in Petitioner's possession when he was arrested. Mr. Dearen also testified that he saw cocaine in two sandwich bags on a pool table in the basement.

The Michigan Court of Appeals majority stated its conclusion and summarized the facts supporting Petitioner's conviction as follows:

> Viewing the evidence in the light most favorable to the prosecution, we conclude that the prosecution presented sufficient evidence from which a rational trier of fact could find that defendant constructively possessed the large bag of cocaine at issue, which the police seized from under the basement stairs of the duplex where an informant had executed a controlled buy of cocaine. According to the testimony of the informant, defendant was the only person involved in the sale of drugs from the basement of the duplex and the informant observed large amounts of cocaine in the basement during the controlled buy. The informant testified that during the sale defendant told him "if [he] knew anybody else that wanted anything to let [defendant] know." The evidence also established that defendant, who attempted to prevent police officers from entering the residence to execute the search warrant, was found with the marked money from the controlled buy in his possession. Considering the totality of the circumstances, this is sufficient evidence to link defendant to the cocaine seized from the residence, and thus to support a finding of constructive possession.

*People v. Towns*, No. 216726, 2000 WL 33417329 (Mich.App. July 7, 2000)(*per curiam*) at 2.

Judge Kathleen Jansen dissented from the majority, and stated her conclusion and summarized the evidence as follows:

> In the present case, taken in a light most favorable to the prosecution, there is no evidence linking defendant to the first bag of cocaine found under the basement stairs. The evidence establishes that defendant did sell about three grams of cocaine to Mr. Dearen and that there were two bags of cocaine on the pool table when the sale was made. However, Mr. Dearen's description of those two bags clearly does not fit the description of the bag (exhibit 5) found under the stairs. Moreover, defendant did not reside at the premises and most certainly did not have exclusive control over the premises. In fact, there were many people in and out of the duplex that day and Ms. Dearen testified that the doors to the duplex were unlocked. There were statements of fact to the jury that are unsupported by the evidence. Thus, the prosecutor's own attempt to link defendant to the cocaine found under the basement stairs was not supported by the evidence that the prosecutor purported to rely on.
>
> Accordingly, I conclude that there was insufficient evidence linking defendant to the cocaine found by the police under the basement stairs. Any number of people had access to, and were in fact, in the basement of a duplex in which defendant did not reside. The packages described by Mr. Dearen did not, contrary to the prosecutor's argument, fit the description of the bag found under the basement stairs. There being no evidence establishing a sufficient connection between defendant and the specific bag of cocaine found under the base-

ment stairs to support an inference that defendant exercised dominion or control over the cocaine, I would vacate defendant's conviction.

*People v. Towns,* No. 216726 2000 WL 33417329, at *4–6 (Jansen, C.J., dissenting).

## II. Procedural History

On October 7, 1998, Petitioner was convicted of possession with intent to deliver between 50 and 225 grams of cocaine after a jury trial in the Ottawa County Circuit Court before Judge Calvin L. Bosman. Petitioner was sentenced on November 23, 1998, to twelve to forty years as a second felony offender.

Petitioner appealed his conviction as of right to the Michigan Court of Appeals, raising the following claims:

I. Under this court's decision in *People v. Lewis,* Mr. Towns is entitled to a reversal of his conviction as the prosecution failed to introduce any evidence to show that Mr. Towns possessed the large bag of cocaine hidden under the stairs.

II. The prosecutor committed reversible misconduct and violated the due process clause by mischaracterizing the testimony so as to falsely claim that Mr. Dearen had seen Mr. Towns with the large bag of cocaine.

III. The prosecutor committed reversible misconduct by repeatedly personally vouching for the veracity of witness Kenneth Dearen.

The Michigan Court of Appeals affirmed petitioner's convictions in an unpublished, divided *per curiam* opinion. *People v. Towns,* No. 216726, 2000 WL 33417329 (Mich.App. July 7, 2000).

The Michigan Supreme Court denied Petitioner's application for leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Towns,* 463 Mich. 981, 624 N.W.2d 188 (2001). Justices Cavanagh and Kelly would have granted leave to appeal. *Id.*

On or about June 12, 2001, petitioner filed the instant petition for a writ of habeas corpus in this Court, raising the following claims for relief:

I. As the dissenting judge in the [Michigan] Court of Appeals correctly argued, Mr. Towns is entitled to a reversal of his conviction as the prosecution failed to introduce any evidence to show that Mr. Towns possessed the large bag of cocaine hidden under the stairs.

II. The prosecutor committed reversible misconduct and violated the due process clause by mischaracterizing the testimony so as to falsely claim that Mr. Dearen had seen Mr. Towns with the large bag of cocaine.

III. The prosecutor committed reversible misconduct by repeatedly personally vouching for the veracity of witness Kenneth Dearen.

Respondent asserts that "the first issue raised is not cognizable in federal habeas corpus and the second and third issues that claim prosecutorial misconduct are without merit." (Resp.'s Answer at 2). Respondent also asserts that Petitioner's conviction was supported by constitutionally sufficient evidence and the Michigan Court of Appeals' majority ruling so finding is a reasonable application of federal constitutional law.

## III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") altered the standard of review federal courts must apply when reviewing applications for a writ of habeas corpus. The AEDPA applies to all habeas petitions filed after the effective date of the act, April 24, 1996. Because Petitioner's application was filed

after April 24, 1996, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review that a federal court must utilize when reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams v. Taylor,* 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The Court defined "unreasonable application" as follows:

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law .... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.

Rather, that application must also be unreasonable.

*Id.* at 410–11 (emphasis in original).

A habeas court reviews an insufficient evidence claim by "asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Matthews v. Abramajtys,* 319 F.3d 780, 788 (6th Cir.2003) (citations omitted). Pursuant to 28 U.S.C. 2254(d)(1) this Court must determine whether the state court's application of the "beyond a reasonable doubt" standard was reasonable. *Williams v. White,* 183 F.Supp.2d 969, 974 (E.D.Mich.2002).

## IV. Discussion

### A. Sufficiency of the Evidence

■ Petitioner contends that insufficient evidence supports his conviction of possession with intent to distribute between 50 and 225 grams of cocaine. Respondent contends that sufficient evidence was presented for a reasonable jury to find that Petitioner constructively possessed the bag of cocaine under the stairs containing 123.1 grams of a 52% cocaine mixture.

■ The Due Process Clause of the Fourteenth Amendment protects an accused in a criminal case against conviction except upon proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The issue before this Court is whether the prosecution presented evidence from which a reasonable factfinder could find that the essential elements of the crime were proven beyond a reasonable doubt. It is not for this Court to decide whether "*it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Rather, the appropriate standard of review

in a federal habeas corpus proceeding involving a claim of insufficiency of evidence in a state criminal conviction is whether, after reviewing the evidence in the light most favorable to the government, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

This standard of review recognizes the trier of fact's responsibility to reasonably resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* at 318. The habeas court must review all of the evidence in the record and determine whether a reasonable jury could have found guilt beyond a reasonable doubt. "The evidence must afford a substantial basis from which a fact in issue can reasonably be inferred." *Spalla v. Foltz*, 615 F.Supp. 224, 227 (E.D.Mich. 1985), *aff'd*, 788 F.2d 400 (6th Cir.1986).

Petitioner challenges the sufficiency of the evidence to support his possession with intent to deliver between 50 and 225 grams of cocaine conviction. This Court must reject his challenge if, considering the evidence in the light most favorable to the prosecution, it concludes that a rational fact finder could have found that the elements of the crime were proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. 2781. In making this judgment, this Court must bear in mind that the beyond a reasonable doubt standard, itself mandated by the Due Process Clause, requires the factfinder "to reach a subjective state of near certitude of the guilt of the accused [and] symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself." *Jackson v. Virginia*, 443 U.S. at 315, 99 S.Ct. 2781.

In reviewing Petitioner's sufficiency of the evidence claim, the Court applies the *Jackson* standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. 2781. With this standard in mind and having reviewed the evidence presented at trial, this Court concludes that a rational trier of fact could have found that Petitioner knowingly possessed the cocaine at issue.

Petitioner was convicted of possession with intent to deliver between fifty and two hundred and twenty-five grams of cocaine. Under Michigan law, conviction of this crime requires proof beyond a reasonable doubt of four elements: 1) that the substance in question was cocaine, or a mixture containing cocaine, 2) that the cocaine or mixture containing cocaine weighed between fifty and two-hundred and twenty-five grams, 3) that the defendant was not authorized to possess the cocaine or mixture containing cocaine, and 4) that the defendant knowingly possessed the cocaine with intent to deliver it. *People v. Acosta*, 153 Mich.App. 504, 511, 396 N.W.2d 463 (1986). Petitioner's claim that the evidence against him is insufficient to support a criminal conviction is based only on whether he knowingly possessed the cocaine at issue.

The cocaine supporting Petitioner's conviction was not found on his person and is not the same cocaine that Mr. Dearen testified he saw during the controlled purchase from Petitioner. However, the prosecution argued that Petitioner was in constructive possession of the bag of cocaine supporting his conviction. (Tr. at 362). Under Michigan law, a person may be guilty of possessing a controlled substance where possession is either actual or constructive. *People v. Wolfe*, 440 Mich. 508, 520–521, 441 Mich. 1201, 489 N.W.2d 748 (1992), *amended*, 441 Mich. 1201, 489 N.W.2d 748 (1992). Constructive posses-

sion of cocaine is a right to exercise control of the cocaine and knowledge that it is present. *Id.* at 520, 441 Mich. 1201, 489 N.W.2d 748.

In *Wolfe,* the Michigan Supreme Court found that there was sufficient evidence that the defendant possessed less than fifty grams of cocaine with intent to deliver it. The defendant Wolfe was found in a Saginaw apartment with three other men, an adult woman, and a juvenile where a quantity of cocaine was also found. Wolfe was not found in actual possession of any cocaine. The Court stated:

A person need not have actual physical possession of a controlled substance to be guilty of possessing it. Possession may be either actual or constructive. Likewise, possession may be found even when the defendant is not the owner of recovered narcotics. Moreover, possession may be joint, with more than one person actually or constructively possessing a controlled substance.

*Id.* at 519–520, 489 N.W.2d 748 (internal citations omitted).

In *Wolfe,* the apartment was entered and searched soon after an undercover officer purchased a small baggie containing crack cocaine with two marked $5 dollar bills. When Wolfe was arrested he was found in actual possession of $265 cash, including the two marked $5 dollars bills used to make the controlled purchase, a beeper, and a key to the back door of the apartment. *Id.* at 511–512, 489 N.W.2d 748. Additional evidence supporting Wolfe's conviction was that when the officers entered the apartment, Wolfe and the other men fled to a back bedroom and made efforts to conceal the cocaine later found there, Wolfe had participated in an earlier cocaine sale at the same location, and Wolfe admitted that he knew there

was cocaine in the apartment. *Id.* at 521–23, 489 N.W.2d 748. The *Wolfe* court ruled that this evidence, together with Wolfe's presence with others in the apartment where the cocaine was found, showed a sufficient link for a rational jury to conclude that Wolfe constructively possessed the cocaine.

In its decision affirming Petitioner's conviction, the Michigan Court of Appeals relies on *Wolfe;* [1] however, there are significant differences between *Wolfe* and the case at bar. In *Wolfe,* the court recognized that, "a person's presence, by itself, at a location where drugs are found is insufficient to prove constructive possession. Instead some additional connection between the defendant and the contraband must be shown." *Wolfe,* 440 Mich. at 520, 441 Mich. 1201, 489 N.W.2d 748 (internal citation omitted). In *Wolfe,* the court articulated three factors that linked the defendant to the cocaine recovered from the apartment, thus establishing the necessary "additional connection." *Id.* at 520, 489 N.W.2d 748.

First, the court found "evidence that defendant Wolfe was in control of the premises where the drugs were found." *Id.* at 522, 489 N.W.2d 748. Another distinguishing fact in *Wolfe* was that there was testimony from officers who participated in the search of the apartment that based on its appearance and contents, no one was living in the apartment. *Wolfe,* 440 Mich. at 512, 441 Mich. 1201, 489 N.W.2d 748.

In the case at bar, although Petitioner acknowledged at trial that he had "free access" to the duplex (Tr. at 323–324), he did not have a key (Tr. at 281). Mary Dearen (sister of confidential informant Kenneth Dearen) lived in the duplex with her boyfriend, Eric Millender, and their

---

**1.** Respondent also relies on *Wolfe* in its Answer in Opposition to Petition for Writ of Habeas Corpus.

child. (Tr. at 270–71). According to Mary Dearen, Petitioner visited the duplex "maybe about four" times before the morning the police entered the duplex on April 16, 1998 (Tr. at 275), and he had stayed overnight "maybe once or twice." (Tr. at 275).

The second factor relied on by the court in *Wolfe* was evidence that the defendant, upon entry by the police, fled with others to a back bedroom where they attempted to conceal the cocaine. In the case at bar, although Petitioner attempted to block police entry into the duplex by trying to hold the door shut (Tr. at 209), there is no indication that attempts were made to conceal the cocaine found under the basement stairs.

Finally, in *Wolfe*, there was evidence that the defendant participated in the "sale of similarly packaged cocaine" earlier in the evening at the apartment. In the case at bar, there was evidence presented that Petitioner participated in a controlled sale of cocaine in the basement of the duplex. Kenneth Dearen, the police informant, testified that, during the controlled sale, he saw cocaine in two forms, packaged for sale:

Q: Mr. Dearen, did you see any quantity of drugs, or suspected drugs in the basement of the place where [Petitioner] was apparently staying on April 15th?

A: Yes sir, I did.

Q: Tell the jury about that. Tell the jury what you saw.

A: He had two baggies, normal sandwich baggies, that was containing, one contained powdered coke that was already bagged up for sale, which were in sixteenths. The other one contained rock, which was bagged up and ready for sale.

Q: Where were these quantities seen, in the basement itself?

A: On the pool table.

(Tr. at 171–172). There was no evidence presented that the confidential informant saw the bag of cocaine supporting Petitioner's conviction. Notably, the bag of cocaine found under the basement stairs and supporting Petitioner's conviction was not "similarly packaged." Rather, it was a bag of undivided cocaine in powder form weighing about 123 grams. (Tr. at 131).

In this case, the Court of Appeals states that "[t]he informant testified that during the sale [Petitioner] told him 'if [he] knew anybody else that wanted anything to let [Petitioner] know.'" *People v. Towns*, No. 216726, 2000 WL 33417329 (Mich.App. July 7, 2000)(*per curiam*). During the sale, testimony revealed that there were two bags of cocaine containing packets for individual sale, one in powder form and one in rock form. (Tr. at 172). Kenneth Dearen, the informant, testified that he told Petitioner during the sale that: "I had never seen that much before." (Tr. at 172)(referring to the bags on the pool table). Also, the Court of Appeals noted that "the informant observed large amounts of cocaine in the basement during the controlled buy." *People v. Towns*, No. 216726, 2000 WL 33417329 (Mich.App. July 7, 2000)(*per curiam*).

The Court of Appeals also noted that Petitioner "was the only person involved in the sale of drugs from the basement of the duplex" and that Petitioner "was found with marked money from the controlled buy in his possession." *People v. Towns*, No. 216726, 2000 WL 33417329 (Mich.App. July 7, 2000)(*per curiam*). Finally, the Court of Appeals notes that Petitioner attempted to prevent police officers from entering the duplex (Tr. at 209), and was found with marked money from the controlled buy in his possession. *People v. Towns*, No. 216726, 2000 WL 33417329 (Mich.App. July 7, 2000).

This evidence, in this Court's view, is very weak circumstantial evidence of constructive possession. However, the Court finds that a rational fact finder could have found beyond a reasonable doubt that Petitioner was in constructive possession of the cocaine supporting his conviction. Therefore, this Court concludes that Petitioner's conviction was supported by sufficient evidence.

## B. Prosecutorial misconduct [2]

### A: The Prosecution's Mischaracterization of Trial Testimony

Petitioner contends that prosecutorial misconduct denied him a fair trial. Petitioner asserts that the prosecutor committed prejudicial misconduct by (1) mischaracterizing Kenneth Dearen's testimony so as to falsely claim that Mr. Dearen had seen petitioner with the large bag of cocaine found in the basement under the stairs and (2) repeatedly personally vouching for the veracity of his confidential informant witness Kenneth Dearen. (Pet.'s Br. at 22, 28).

The Michigan Court of Appeals majority found that Petitioner failed to preserve these claims by failing to object to the allegedly improper prosecutorial remarks at trial. Hence, that court reviewed these claims only to determine whether a curative instruction would have cured any error and whether failure to review the issue would result in a miscarriage of justice. The Michigan Court of Appeals found that any prejudicial effect from the allegedly

improper remarks was not so great that curative instructions would have been ineffective. Regarding Petitioner's claim that the prosecutor misstated the evidence, the Michigan Court of Appeals found that had there been a timely objection, the trial court could have cautioned the prosecutor and instructed the jury, dispelling any misleading inference. Regarding the prosecutor's vouching for the veracity of Mr. Dearen, a timely objection could have brought prompt admonishment to the jury regarding its role as the finder of fact, thereby curing any error caused by the prosecutor vouching for Mr. Dearen's veracity. Hence, the Michigan Court of Appeals found no miscarriage of justice. *People v. Towns*, No. 216726, 2000 WL 33417329, at *2.

Respondent contends that (1) the prosecutor did not misstate the evidence, but merely argued a fair inference from the facts; (2) the prosecutor did not personally vouch for the veracity of Mr. Dearen, but only rebutted defense attacks on Mr. Dearen's credibility, and (3) considering the totality of the circumstances, including the strength of the evidence of Petitioner's guilt, the prosecutor's allegedly improper statements were not so egregious as to deny petitioner a fair trial.

This Court must apply the harmless error standard in deciding whether prosecutorial misconduct mandates habeas relief. *Macias v. Makowski*, 291 F.3d 447, 451 (6th Cir.2002)(citing *Pritchett v. Pitch-*

---

**2.** The Michigan Court of Appeals declined to review Petitioner's prosecutorial claim on the merits because he failed to object to the prosecutor's remarks at trial. Rather, the court found that any prejudicial effect from the comments could have been cured by an appropriate instruction and concluded that there was "no miscarriage of justice." *People v. Towns*, No. 216726,2000 WL 33417329, at *2 (Mich.App. July 7, 2000)(*per curiam*). In this case, Respondent has failed to raise Peti-

tioner's state procedural default as a defense. Instead, Respondent addresses the merits of Petitioner's claim, arguing that no due process violation occurred in this case. (Resp. Answer at 8) This Court is not required to raise the issue of procedural default *sua sponte*, and declines to do so now. *Crawley v. Curtis*, 151 F.Supp.2d 878, 887 (E.D.Mich.2001)(citing *Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444, (1997)).

*er,* 117 F.3d 959, 964 (6th Cir.1997)). The relevant inquiry is "whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Macias,* 291 F.3d at 451 (citing *Donnelly v. De-Christoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

The Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *Macias v. Makowski,* 291 F.3d 447, 452 (6th Cir.2002) (citation omitted). First, this Court must determine whether the prosecutor's remarks were improper. *Id.* at 452. Second, if the remarks were improper, then the four-factor test set forth in *United States v. Carroll,* 26 F.3d 1380 1388 (th Cir.1994) is used to determine "whether the impropriety was flagrant" and thus constitutes a violation of defendant's due process rights. *Id.* at 452 (citation omitted). The four factors are: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Macias,* 291 F.3d at 452 (citation omitted).

█ Review of the record shows that the prosecutor did argue facts not in evidence during his closing statement. Kenneth Dearen testified that, in addition to the cocaine that he bought from Petitioner, he saw "two baggies, normal sandwich baggies" on the pool table. (Tr. at 172). The prosecutor misstated the evidence by stating that Mr. Dearen testified that one of the two bags on the pool table was broken down into retail sized quantities and the other "wasn't broken down, fitting the description of this." (Tr. at 372). The prosecutor's rebuttal remarks show that the "this" he referred to was the cocaine found in the bag under the stairs. The prosecutor stated: "[D]on't forget what Kenny Dearen said. He said that there were actually two quantities on the pool table. One that was already broken down into small bags. And another that was not, that was in more of a solid form. Like the exhibit we have here in Court." (Tr. at 405). The only exhibit of drugs at trial was Exhibit 5, the quantity of drugs found under the stairs, an undivided bag of cocaine in powder form. (Tr. at 217). The prosecutor misstated that Mr. Dearen testified that one of the bags on the pool table contained cocaine in the same form as the cocaine found under the stairs—not in retail sized packets and more solid, like the bag containing 123 grams admitted as an exhibit. Mr. Dearen did not testify as to seeing any cocaine in solid or powder form in an undivided quantity like the exhibit admitted at trial.[3]

█ Thus, the prosecutor misstated the evidence concerning what Mr. Dearen saw on the pool table in a manner tending to increase the probability that the jury would find that Petitioner had constructive possession of the cocaine under the stairs. It is improper for a prosecutor, during closing arguments, to "bring to the attention of the jury any purported facts that are not in evidence and are prejudicial." *Macias,* 291 F.3d at 452 (citation omitted).

█ Having concluded that the prosecutor's remarks were improper, the Court considers the four factors from *United*

**3.** As stated previously, this mischaracterization of the testimony was of great significance to Michigan Court of Appeals Judge Kathleen Jansen, who, believing Petitioner's conviction should be reversed, stated, "[t]he packages described by Mr. Dearen did not, contrary to the prosecutor's argument, fit the description of the bag found under the basement stairs." (*See* p. 3, *supra.*)

*States v. Carroll* to determine whether the error was harmless. The first factor is whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant. The Court finds that the prosecutor's comments did both. Clearly, the remarks of the prosecutor suggesting that Kenneth Dearen saw a bag like Exhibit 5 tended to mislead the jury, when in fact, Kenneth Dearen never testified that he saw a bag like Exhibit 5, that is, an undivided bag of cocaine in powder form. This testimony tended to prejudice Petitioner as possession of the cocaine is an essential element of the crime charged. Therefore, this factor weighs in favor of Petitioner.

The second factor is whether the conduct or remarks were isolated or extensive. While not extensive, the prosecutor's remarks spoke directly to a crucial issue at trial, i.e. was there any evidence linking Petitioner to the bag of cocaine containing 123 grams which was found under the basement stairs—the cocaine which supported his conviction. By misstating the evidence, the prosecutor was improperly linking Petitioner to the cocaine in question.

Third, the Court must decide whether the remarks were deliberate or accidental. The Court notes that the trial was brief (2 days), there were few witnesses, and Kenneth Dearen clearly testified that he saw two bags during the controlled purchase, both of which contained smaller packages of cocaine apparently ready for individual sale. These facts make it unlikely that the prosecutor accidentally misstated Dearen's testimony.

Finally, the Court must consider the strength of the evidence against the Petitioner. As discussed thoroughly above, there was no direct evidence linking Petitioner to the cocaine supporting Petitioner's conviction. Rather, the prosecution relied on tenuous circumstantial evidence. This factor weighs in favor of Petitioner.

The Court is satisfied that the weakness of the evidence presented at trial, together with the prosecutor's improper reference to evidence during closing arguments, provide a basis for granting Petitioner's habeas relief in this case. Therefore, the Court finds it unnecessary to reach Petitioner's improper vouching claim.

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **CONDITIONALLY GRANTED.** The Court **ORDERS** that the warden release Petitioner from custody, unless the State of Michigan initiates a new trial in this case within one hundred and twenty (120) days from the entry of this Order. Should the State appeal this decision to the United States Court of Appeals for the Sixth Circuit, this Order is stayed pending the disposition of that appeal.